UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAD STANBRO,

              Plaintiff,

        -against-

WESTCHESTER COUNTY HEALTH
CARE CORPORATION, WESTCHESTER
MEDICAL CENTER, FRANK WEBER and
JOHN FULL,

              Defendants.
------------------------------------------------------------X
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAD STANBRO,

              Plaintiff,

        -against-

CORRECTION OFFICER NADYA PALOU,
CORRECTION OFFICER RAYMOND DEAL,
CORRECTION OFFICER KRISTOFER LEONARDO,
CORRECTION OFFICER RICHARD LANDRY,
CORRECTION NURSE GARY PAGLIARO and
CORRECTION SERGEANT ENRIQUE TORRES,

              Defendants.
------------------------------------------------------------X

**JOINT PRETRIAL ORDER**

7:19-cv-10857-KMK

7:20-cv-01591-KMK

1. The full caption of these consolidated actions is as appears above.

2. **Trial Counsel**:

      For Plaintiff:

Sivin, Miller & Roche, LLP, by Glenn Miller and Edward Sivin
20 Vesey St., Suite 1400
New York, NY  10007
Phone:  (212) 349-0300

1

Fax:    (212) 406-9462
Emails: gmiller@sivinandmiller.com    esivin@sivinandmiller.com


      <u>For Defendants</u>:

<u>Frank Weber</u>
Rawle & Henderson LLP by Robert A. Fitch and Iolanda Francavilla
14 Wall Street, 27th Fl.
New York, NY 10005
Phone: (212) 323-7070
Fax: (212) 323-7099
Emails: Rfitch@rawle.com    ifrancavilla@rawle.com


<u>Westchester County Healthcare and Dr. John Full</u>
Wilson, Bave, Conboy, Cozza & Couzens by Claudine Weis and Jay Couzens
707 Westchester Avenue, Ste. 213
White Plains, NY 10604
Phone: (914) 686-9010
Emails: John@wbccc.com    Cweis@wbccc.com


<u>Kristofer Leonardo, Richard Landry, Gary Pagliaro, and Enrique Torres</u>
Office of the NY State Attorney General by Jeb Harben and John Doran
28 Liberty Street
New York, NY  10005
Phone: (212) 416-6185 /8591
Emails: Jeb.Harben@ag.ny.gov    John.Doran@ag.ny.gov


<u>Raymond Deal  and Nadya Palou</u>
Ofeck & Heinze, LLP by Mark F. Heinze
85 Main Street, Suite 204
Hackensack, NJ 07601
Phone: (201) 488-9900
Fax: (201) 488-4475
Cell: (646) 208-1935
Emails: markfheinze@gmail.com    mark@ofeckheinze.com


    3.  All parties acknowledge that this Court has subject matter jurisdiction over this action

in that it is brought pursuant to 28 U.S.C. § 1331 and § 1367, and includes causes of action pursuant

to 42 U.S.C. § 1983.  However, all of the defendants deny that plaintiff has any valid claims

pursuant to 42 U.S.C. § 1983. Additionally, defendants contest that the Court possesses subject

matter jurisdiction for any state-law claim asserted in this litigation pursuant to *N.Y. Corr. Law §*
*24. See generally N.Y. Corr. Law S 24*; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996);
*McLean v. Ferguson*, No. 920CV1115TJMTWD, 2021 WL 6750544, at *7 (N.D.N.Y. Nov. 5,
2021) (discussing subject matter jurisdiction), report and recommendation adopted, No.
920CV1115TJMTWD, 2022 WL 252162 (N.D.N.Y. Jan. 27, 2022).

    4. **Summary of Claims and Defenses**:

        Plaintiff's Summary

    Plaintiff alleges various causes of action arising out of an August 31, 2018 incident that
occurred at Westchester Medical Center (WMC), which is owned and operated by defendant
Westchester County Health Care Corporation, a public benefit corporation.  On that day, plaintiff
was an incarcerated individual and was undergoing a surgical procedure at WMC by defendants
Frank Weber (Weber) and John Full (Full).  Plaintiff had been escorted from Fishkill
Correctional Facility (Fishkill) to WMC by defendants Correction Officers Nadya Palou (Palou)
and Raymond Deal (Deal), both of whom remained with and oversaw plaintiff during the
procedure.  Defendants Correction Officers Kristofer Leonardo (Leonardo) and Richard Landry
(Landry) were in the hallway outside the room in which the surgical procedure was taking place.

    At some point during the procedure, after he had been administered and was under the
influence of intravenous anesthesia, plaintiff exhibited physical agitation.  In response, Palou,
Deal, Leonardo, and Landry used excessive force against plaintiff, resulting in severe physical
injuries to plaintiff, rendering him unable to move any of his extremities.  In that injured state,
plaintiff then was caused to fall or slip from the surgical chair onto the floor of the dental clinic.
Thereafter, without first having plaintiff undergo a medical evaluation, and without arranging for

plaintiff's neck to be immobilized in any manner, Weber and Full discharged plaintiff from their care and allowed him to be removed from WMC by Palou and Deal in a wheelchair. Palou and Deal then placed plaintiff in the rear of a prison van, still without any neck mobilization, and drove him forty-five miles back to Fishkill.

When he arrived at Fishkill, plaintiff was forcibly removed from the prison van and brought to the prison clinic by defendants Nurse Gary Pagliaro and Sergeant Enrique Torres, again without first applying any neck mobilization. While in the clinic, Pagliaro physically and verbally abused plaintiff in the presence and with the encouragement of Torres. While in the clinic, plaintiff again was allowed to slide or fall onto the floor.

As a result of the collective actions of defendants, plaintiff sustained severe personal injuries, including temporary quadriplegia, for which he was required to undergo emergency spinal fusion surgery hours after the incident. Plaintiff still suffers the effects of permanent damage to his cervical spine.

Plaintiff's Amended Complaint against WMC, Weber, and Full alleges three causes of action. The First Cause of Action is against Weber and Full pursuant to 42 U.S.C. § 1983, and alleges, *inter alia*, that Weber and Full violated plaintiff's rights under the Fourth (unreasonable seizures), Eighth (cruel and unusual punishment), and Fourteenth (substantive due process) Amendments to the U.S. Constitution by allowing and failing to intervene in the use of excessive force against plaintiff while he was under Weber and Full's care, by causing and/or allowing plaintiff to fall or slip from the surgical chair onto the floor of the dental clinic, and in prematurely discharging the severely injured plaintiff into the care and custody of two of his four assailants. (In light of the parties' acknowledgment that plaintiff's federal claims are properly analyzed under the Eighth Amendment, *see* Stipulations of law, *infra*, plaintiff hereby withdraws

his Fourth and Fourteenth Amendment claims). The Second Cause of Action is against WMC, Weber, and Full, and alleges state-law claims for negligence and recklessness in connection with WMC, Weber, and Full's treatment of plaintiff while at WMC. The Third Cause of Action is against WMC, Weber, and Full, and alleges state-law claims for malpractice in connection with WMC, Weber and Full's treatment of plaintiff at WMC.

Plaintiff's Amended Complaint against Palou, Deal, Leonardo, Landry, Pagliaro, and Torres alleges five causes of action, each against all six defendants. The First Cause of action is pursuant to 42 U.S.C. § 1983 and alleges, *inter alia*, that the actions of these defendants violated plaintiff's rights under the Eighth Amendment to the U.S. Constitution not to be subject to cruel and unusual punishment. The Second Cause of action, which plaintiff now withdraws, is pursuant to 42 U.S.C. § 1983, and alleges, *inter alia*, that the actions of these defendants violated plaintiff's substantive due process rights guaranteed under the Fourteenth Amendment to the United States Constitution. The Third Cause of action, which plaintiff now withdraws, is pursuant to 42 U.S.C. § 1983, and alleges, *inter alia*, that the actions of these defendants violated plaintiff's rights under the First Amendment to the U.S. Constitution. The Fourth Cause of Action alleges state-law claims for assault and battery. The Fifth Cause of Action alleges state-law claims for intentional infliction of emotional distress.

Both of plaintiff's amended complaints seek compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

Defendants' Summaries

Defendants Dr. Frank Weber, Westchester County Health Care and Dr. John Full:

In the Amended Complaint, there are three causes of action listed against defendants Dr. Frank Weber, Westchester County Health Care and Dr. John Full, which include violations of the

4th, 8th and 14th amendments, negligence and dental malpractice. It is defendants' position that the only viable cause of action against these defendants is for professional malpractice.

To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Dr. Weber's and Dr. Full's treatment of plaintiff did not fall within the criteria for a 1983 claim. Dr. Weber and Dr. Full only treated plaintiff for a short amount of time to start the dental procedure, before DOCCS stepped in to subdue him after he became aggressive and violent. Following the subduing of plaintiff, plaintiff never told Dr. Weber or Dr. Full he was injured. He was in a wheelchair with wrist and ankle shackles. He made no complaints and there were no obvious signs of an injury such as bleeding.

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII. This includes depriving prisoners of their "basic human needs —*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 200 (1989)). For a plaintiff to establish that a prison official violated the Eighth Amendment, "(1) the alleged deprivation must, as an objective matter, be 'sufficiently serious,' [*i.e.*, the 'objective prong'] and (2) the alleged perpetrator—ordinarily a prison official—must possess a 'sufficiently culpable state of mind.' [*i.e.*, the 'subjective prong']." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This again does not apply to Dr. Weber or Dr. Full.

"[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citations and quotation marks omitted).

A deliberate indifference claim has two elements. The first, which is objective, requires the inmate to show that he was actually deprived of adequate medical care by an official's failure to take reasonable measures in response to a sufficiently serious medical condition. The second element, which is subjective, requires the inmate to demonstrate that the official acted with a culpable state of mind of subjective recklessness, such that the official knew of and consciously disregarded an excessive risk to inmate health or safety. Mere allegations of negligent malpractice do not state a claim of deliberate indifference. *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (citations and quotation marks omitted). In sum, an inmate bringing a deliberate indifference claim must show an objectively serious deprivation of medical care, and a "sufficiently culpable state of mind." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (citation and quotation marks omitted).

Here, the cause of Mr. Stanbro's aggression in the dental operatory was not the anesthetic agents given by Dr. Weber. There are various reasons why sedation does not work. It is not a departure from the standard of care for the anesthetic agents to not sedate a patient or for some pain to still be felt by the patient during the procedure. In this case, Mr. Stanbro's aggression was not related to the anesthetic agents because there was not a large amount given and plaintiff never reached the full sedative state. Instead, Mr. Stanbro's aggression was caused by pain he felt during the subject procedure. Mr. Stanbro was at all times still conscious and it was never intended for him to be fully sedated.

7

Dr. Full, a resident physician, employed by Westchester Medical Center, was assisting attending dentist, Dr. Weber, with the procedure involving Plaintiff. He was, at all times, under the supervision and direction of Dr. Weber.

The Aldreate score sheet which was executed by Dr. Full was performed immediately at the conclusion of the aborted procedure; Dr. Full took into account his observations of plaintiff's behavior and actions to complete the form as well as communicating with Dr. Weber. He utilized the blood pressure score that were last on the monitor prior to it being knocked over when Plaintiff stood up out of the chair during the course of the procedure. When the procedure was aborted, when plaintiff became aggressive, Dr. Full was instructed to exit the procedure room which he did. He had no further direct contact with the plaintiff after that point in time.

The Aldrate score is a tool to assess a patient at the completion of a procedure to determine their functionality after the administration of sedation. There is no continuing duty to repeatedly evaluate the patient once the procedure has been concluded, or in this instance, aborted and the patient is judged to have recovered. There is no duty to perform the Aldrate score when the patient is physically exiting the facility. Given the circumstances encountered during this procedure it was appropriate to conduct the evaluation outlined on the Aldrete score and post anesthesia record visually and based on the last recorded vital signs and blood pressure reading available to Dr. Full at the time. Additionally, Dr. Full did not discharge the patient which was one of the responsibilities of the attending, supervising, dentist, Dr. Weber. The treatment provided by the defendants was at all times, given the circumstances, within good and accepted dental practice. The injuries alleged were due to the actions and/or events outside the control of Dr. Weber and Dr. Full and not as a result of any deviations from the accepted standard of care, action or inaction by Dr. Weber, Dr. Full or dental staff, that contributed to or caused the alleged injuries herein.

<u>OAG-Represented Defendants</u>

OAG Represented Defendants (Leonardo, Landry, Pagliaro, and Torres) deny all of plaintiff's allegations in their entirety. Moreover, Defendants Leonard and Landry maintain that they used a reasonable amount of force necessary to restore discipline and order, and/or to restrain a non-compliant prisoner from continuing his attack on a civilian medical staff and other correctional officers. Additionally, Defendants Pagliaro and Torres maintain that Plaintiff was provided adequate medical care and that neither defendant interfered and/or prevented any such care. As such, the OAG Represented Defendants maintain that Plaintiff cannot establish the objective or subjective components of any Eighth Amendment claim against any OAG Represented Defendant.

Additionally, OAG Represented Defendants maintain that at no time did they act willfully or maliciously for purposes of any punitive damages award.

In the alternative, if one or more of the OAG Represented Defendants are found to have violated Plaintiff's constitutional rights, he is/they are still entitled to qualified immunity as a matter of law. As set forth in *Cowan v. Breen*, 352 F.3d 756 (2d Cir. 2003), based on the testimony at trial, and unless ordered otherwise by the Court, the OAG Represented Defendants will submit special interrogatories for the jury prior to the charge conference.

Additionally, Plaintiff's state law claims are barred by Section 24 of the New York Correction Law.

<u>Raymond Deal and Nadya Palou</u>

Defendants Deal and Palou adopt the Summary of the OAG-Represented Defendants and add the following. Deal and Palou had no prior connection to Stanbro, or to each other. They provided transportation and guarded Stanbro from Fishkill Correction to Westchester Medical

Center and bank to Fishkill.   The trip was for Stanbro to see an oral surgeon re-wire his previously-dislocated jaw, which had re-dislocated when (according to him) he was assaulted by another prisoner at Fishkill.   The trip to WHC was uneventful.

Deal and Palou are not medical professionals.   They are correction officers providing guard and transportation services, to protect the public.

In the examination room, Stanbro's handcuffs were removed into order to permit IV medication.   His feet were shackled.   In addition to Palou (who was at the door), Deal (who was inside the room), and Leonardo (who was there with other prisoners, and chatting with Palou), there was present Dr. Weber (the attending oral surgeon), Dr. Full (a resident oral surgeon assisting Dr. Weber), and a dental student.

In the middle of the procedure, Stanbro suddenly and unexpectedly interrupted the procedure, got out of the dental chair, and attempted to strike Dr. Weber and then to strike Deal. In order to protect the doctors, the student and others, Deal, Palou and Leonardo were compelled to subdue Stanbro, issuing repeated verbal commands to calm down and stop resisting, to stop Stanbro's assault, and to handcuff him.

There was present in the examination room, and immediately within Stanbro's reach (he was not handcuffed), typical dental tools for the procedure, several of which are sharp, dangerous and could have been used by Stanbro as weapons.

The examination room is entered from a hall.  At the opposite end of the hall, there is an exit door to a staircase that leads to the outside grounds of the hospital, walkways, parking etc.

The officers returned Stanbro to the dental chair.   He continued to violently resist.   Stanbro "donkey kicked" Officer Deal, causing him to crash into a cabinet or other furniture, resulting in injury and a large bruise on Deal's back.   The officers eventually succeeded in handcuffing

Stanbro.  Stanbro threw himself to the floor from the chair, and had to be returned to the chair.

Deal, Palou and Leonardo did not use any more force than was necessary to get control of a violent inmate.   The incident was spontaneous and unexpected, occurring in a non-jail setting in the presence of civilians and potential weapons.   Stanbro caused and created the incident, resulting in an unfortunate injury.

After he calmed down, Stanbro was placed in a wheelchair.   He was cleared to leave by Dr. Weber and WMC, and Deal and Palou drove him back to Fishkill Correctional.   Palou requested and received paperwork from Dr. Weber, which she believed stated that Stanbro could be released from the hospital and returned to Fishkill Correctional.

The ride back was uneventful.  At the jail, they left him in the van, and jail medical staff and other officers took responsibility for him.   Deal received medical treatment for his injuries, and went out on medical leave for more than a month, due to the injuries caused by the plaintiff.

5.   This case is to be tried with a jury.  The parties estimate that the trial will require approximately 10 days to complete.

6.   The parties have not consented to a trial before a magistrate judge.


7.   **The following are stipulations of fact and law that have been agreed upon by the parties**

Stipulations of Fact

a.  On August 31, 2018, plaintiff was incarcerated at Fishkill Correctional Facility (Fishkill).

b.  On August 31, 2018, defendant Westchester County Health Care Corporation was a public benefit corporation which owned and operated Westchester Medical Center (WMC).

c. On August 31, 2018, defendant Frank Weber (Weber) was an oral surgeon, and was an attending oral surgeon at WMC, where he also had admitting privileges.

d. On August 31, 2018, Weber rendered treatment to plaintiff pursuant to a contract with the New York State Department of Corrections and Community Supervision (DOCCS).

e. On August 31, 2018, defendant John Full (Full) was employed by, and was a resident in the oral maxillary department of, WMC.

f. On August 31, 2018, defendant Nadya Palou (Palou) was employed by DOCCS as a correction officer.

g. On August 31, 2018, defendant Raymond Deal (Deal) was employed by DOCCS as a correction officer.

h. On August 31, 2018, defendant Kristofer Leonardo (Leonardo) was employed by DOCCS as a correction officer.

i. On August 31, 2018, defendant Richard Landry (Landry) was employed by DOCCS as a correction officer.

j. On August 31, 2018, defendant Gary Pagliaro (Pagliaro) was employed by DOCCS as a nurse.

k. On August 31, 2018, defendant Enrique Torres (Torres) was employed by DOCCS as a sergeant.

l. On August 31, 2018, Palou and Deal escorted plaintiff in a prisoner van from Fishkill to a dental clinic at WMC to undergo an oral surgical procedure to be performed by Weber and Full.

Stipulations of Law

a.  Without conceding that plaintiff has any valid claims pursuant to 42 U.S.C. § 1983, all parties stipulate that plaintiff's Section 1983 claims are subject to adjudication under the Eighth Amendment of the U.S. Constitution, and not the Fourth or Fourteenth Amendment to the U.S. Constitution.

8.  **Witnesses whose testimony will be offered at trial on the parties' cases in chief[1]**

Plaintiff intends to offer testimony from the following witnesses.  Unless otherwise indicated, all such testimony will be in person:

a.  Chad Stanbro

b.  Frank Weber

c. John Full

d.  Nadya Palou (remote)

e.  Raymond Deal

f. Kristofer Leonardo

g.  Richard Landry

h.  Gary Pagliaro (remote)

i.  Enrique Torres

j.  Lt. Tracey DeCosta

k.  D.S.S. Stephen Urbanski

l.  OSI Investigator Lauren Ramsey

k.  OSI Investigator Francisco Ortiz

---

[1] The Parties reserve their rights to object to any of the witnesses identified in this section.

l.  Assistant District Attorney Jennifer Sculco

m. District Attorney Investigator Edward Salinas

n.  NY State Police Investigator Nick Justin

o.  Scott Stanbro

p.  Kim Reddon

q.  Edward Sivin

r.  Robert Todd, M.D.

Defendant Frank Weber intends to offer testimony from the following witnesses:

a.  Dr. Frank Weber.

b.  Dr. Harry Dym (Remote)


   Defendants Westchester County Health Care and Dr. John Full intend to offer

testimony from the following witnesses:

a.  Dr. John Full

b.  Dr. Sidney Eisig

OAG Defendants and Deal/Palou intend to offer testimony from the following witnesses, all to
appear in person unless otherwise denoted below:

a)  Chad Stanbro

b)  Frank Weber

c)  John Full

d)  Nadya Palou  (to testify remotely)

e)  Raymond Deal

f)  Kristofer Leonardo

g)  Richard Landry

    h)  Gary Pagliaro (to testify remotely)

    i)  Enrique Torres

    j)  Lt. Tracey DeCosta

    k)  D.S.S. Stephen Urbanski

    l)  Dr. Douglas Cohen

    m)  Dr. Stanley Eisig

    n)  Dr. Harry Dym

    o)  Parole Officer Shawn Reynolds


    9.  **Exhibits to be offered in case in chief**[2]

                Plaintiff's Exhibits

-Exhibits 1a through 1g:  Seven video recordings from WMC;*

-Exhibits 2a through 2c:  Three photographs from inside the WMC dental clinic;*

-Exhibits 3a through 3l:  Twelve photographs taken from video recordings from WMC;*

-Exhibits 4a through 4d:  Four photographs taken from inside Fishkill infirmary;*

-Exhibit 5:  DOCCS Inmate Injury Report;*

-Exhibit 6:  DOCCS Unusual Incident Report;*

-Exhibit 7:  Use of Force Report generated by Deal;*

-Exhibit 8:  Use of Force Report generated by Palou;*

-Exhibit 9:  Use of Force Report generated by Torres;*

-Exhibit 10:  Use of Force Report generated by Leonardo;*

---

[2] All counsel acknowledge the authenticity of those exhibits with one star.  The parties' acknowledgment, however, is subject to a final exchange and review of the respective exhibits.  All parties also agree that any exhibits listed by one party can be used by any other party, subject to any objections other than authenticity.

-<u>Exhibit 11</u>:  Use of Force Report generated by Landry;*

-<u>Exhibit 12</u>:  To/From Memorandum from Palou to Washer, dated 09/06/18;*

-<u>Exhibit 13</u>:  To/From Memorandum from Torres to Donohue, dated 08/31/18;*

-<u>Exhibit 14</u>:  To/From Memorandum from Dickinson to Torres, dated 09/14/18;*

-<u>Exhibit 15</u>:  To/From Memorandum from Pagliaro to Donahue, dated 08/31/18;*

-<u>Exhibit 16</u>:  To/From Memorandum from Pagliaro to Urbanski, dated 09/04/18;*

-<u>Exhibit 17</u>:  To/From Memorandum from Williams to Palou, dated 09/10/18;*

-<u>Exhibit 18</u>:  To/From Memorandum from Smith to Landry, dated 09/07/18;*

-<u>Exhibit 19</u>:  To/From Memorandum from Smith to Leonardo, dated 09/07/18;*

-<u>Exhibit 20</u>:  To/From Memorandum from Williams to Palou, dated 09/10/18;*

-<u>Exhibit 21</u>:  To/From Memorandum from Carreras to Donahue, dated 08/31/18;*

-<u>Exhibit 22</u>:  Employee Accident/Injury Report:  Deal;*

-<u>Exhibit 23</u>:  Employee Accident/Injury Report:  Palou;*

-<u>Exhibit 24</u>:  Text messages between Landry and Leonardo;*

-<u>Exhibits 25a to 25b</u>:  Photographs purportedly taken of Deal after the incident;*

-<u>Exhibit 26</u>:  Misbehavior Report;*

-<u>Exhibit 27</u>:  Records of transport of plaintiff;*

-<u>Exhibit 28</u>:  Records of transport of plaintiff from Fishkill to St. Luke's Hospital;*

-<u>Exhibit 29</u>:  Declaration of Urbanski, dated 04/20/21;*

-<u>Exhibit 30</u>:  DOCCS Directive 4943:  Hand Held Video Recording for Security Procedures;*

-<u>Exhibit 31</u>:  DOCCS Directive 4944:  Use of Force;*

-<u>Exhibit 32</u>:  DOCCS Directive 4904:  Hospital Detail;*

-<u>Exhibit 33</u>:  DOCCS Employee Manual;*

-Exhibit 34:  DOCCS Tier III Hearing Packet;*

-Exhibit 35:  DOCCS Tier III Hearing Transcript;*

-Exhibit 36:  District Attorney Memo of Weber Interview;

-Exhibit 37:  District Attorney Memo of Full Interview;

-Exhibit 38:  WMC Records for plaintiff prior to and including 08/31/18 dental clinic visit;*

-Exhibit 39:  DOCCS Medical Records for plaintiff;*

-Exhibit 40:  St. Luke's Hospital Records for plaintiff;*

-Exhibit 41:  WMC Records for plaintiff upon return to hospital after 08/31/18 incident;* and

-Exhibit 42:  Medical illustrations of plaintiff's spine and surgery.

<u>Defendants' Exhibits</u>

<u>Dr. Weber's Exhibits</u>

Exhibit 1 – Dr. Weber's contract with DOCCS.*

Exhibit 2 - WMC Policy for correction patients (WMC Production Ex I)*

Exhibit 3 - Dr. Thomas Cross – St. Joseph's Health Services Records *

Exhibit 4 - Office of Mental Health Records*

Exhibit 5 - Great Meadow Correctional Facility Records*

Exhibit 6- Renovation House Spencer Records*

Exhibit 7 - Guthrie County Hospital Records*

Exhibit 8 - Elmira Correctional Facility Records*

Exhibit 9 – Fishkill Correctional Facility Records*

17

OAG Defendants' Exhibits

Exhibit 1(a) –(f):  Six Photos from WMC;

Exhibit 2: Walsh RMU medical Records for plaintiff;*

Exhibit 3: Summary of Plaintiff's incarceration history with DOCCS;*

Exhibit 4: Plaintiff's parole file*

Exhibit 5: DOCCS medical Records for plaintiff;*

Exhibit 6(a)-(b): Two Photos of Deal

Exhibit 7: Plaintiff's disciplinary history while incarcerated with DOCCS*

Exhibit 8: Plaintiff's Chemung County Medical Records*

Exhibit 9: Plaintiff's psychiatric records*

Exhibit 10: Plaintiff's medical records from Arnot*

Exhibit 11: WMC Records for plaintiff upon return to hospital after 08/31/18 incident;*


Deal/Palou Exhibits

D101 – Photo – sample surgical tray

D102 – Photo – Deal bruise photo #1

D103 – Photo – Deal bruise photo #2

D104 – Photo – Exam Chair

D105 – Photo – Exam Room

D106 – Photo – Exit Hall

D107 – Photo – Outside stairs

D108 – Physical Exhibit – Sample dental tools

D109 – Deal Injury Report (Deal Dep. Ex. 27)*

<u>D110</u> – Deal Workers Comp Election Form*

<u>D111</u> – Deal Employee Training History (P54-67)*

<u>D112</u> – Trip reports (OAG 1079-1082)*

<u>D113</u> – Progress Notes/Incident Report of Weber (Weber Ex 4)*

<u>D114</u> – OHM File of Stanbro (OMHOMH806-1029)*

<u>D115</u> – Training Record of Palou (P97-109)*

<u>D116</u> – Restraints

<u>D117</u> – Tier Hearing Packet*

<u>D118</u> - Certified copy of judgment of conviction of plaintiff

<u>D119</u> - Certified copy of indictment (or information) resulting in conviction of plaintiff

10.  The parties do not consent to less than a unanimous verdict.