# SIVIN, MILLER & ROCHE, LLP
## 20 Vesey Street, Suite 1400
## New York, NY  10007
### Phone:  212 349-0300
### Fax:  212 406-9462

July 4, 2022

<u>Via ECF</u>

Hon. Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY  10601

Re:  Stanbro v. Westchester County Health Care Corp., et al.
19-cv-10857

Stanbro v. C.O. Nadya Palou, et al.,
20-cv-01591

Your Honor:

The undersigned represents plaintiff in the above consolidated actions.  I write to address two evidentiary matters that arose during trial:  1) The Court's request that the parties attempt to arrive at a stipulation on the issue of the nonproduction of the videotape of plaintiff's transport from the Fishkill infirmary to St. Luke's Hospital, and the deposition testimony of Deputy Superintendent of Security Stephen Urbanski (DSS Urbanski) regarding the videotape; and 2) The admissibility of testimony by an investigator from the District Attorney's office about a statement made to the investigator by defendant Frank Weber regarding plaintiff's position in the dental chair at the time plaintiff was being restrained by correction officers.

### 1)  <u>Stipulation regarding the videotape and DSS Urbanski's testimony re same</u>

As of the drafting of this letter, the parties have not agreed on a stipulation on this issue. However, plaintiff proposes that, in lieu of testimony from DSS Urbanski (either live or via deposition), the jury be instructed as follows, all of which plaintiff maintains is undisputed:

1. Deputy Superintendent of Security Stephen Urbanski ordered that Stanbro's transport from the Fishkill infirmary to St. Luke's Hospital be videotaped because, in Urbanski's estimation, "there obviously was a use of force that details did not seem to add up on." *Urbanski depo.*, pp. 61, 86.[1]

---

[1] This statement is not being offered for the truth of the matter asserted, but instead to explain what prompted Urbanski's investigation and to underscore the importance of preserving the videotape.  *See Marji v. Rock*, 2011 U.S. Dist. LEXIS 120221, at *31-32 (S.D.N.Y. July 19, 2011) ("Thus, "[i]f a statement is offered for a purpose other than proving the truth of the matter asserted, such as to explain actions taken as a result of the statement or to show how an investigation developed, its admission violates neither the hearsay rule nor the *Confrontation Clause*." Rolland v. Greiner, 02 Civ. 8403 (GBD) (MUD), 2006 U.S. Dist. LEXIS 17034, *7 (S.D.N.Y. March 27, 2006); <u>cf. United States v. Gilliam</u>, 994 F.2d 97, 103 (2d Cir. 1993) (finding no error stemming from trial court's admission of statement made to

2.  On orders from DSS Urbanski, Stanbro's transport from Fishkill Correctional Facility to St. Luke's Hospital was videotaped by a DOCCS correction officer, and the videotape also recorded audio.  *Id.*, pp. 62-62.

3.  DOCCS regulations required that the original videotape be stored in a locked cabinet inside a secured room at Fishkilll, *id.*, pp. 74-75, where it was required to be kept for five years, *id.*, p. 76.  *See* plaintiff's Exhibit 30, DOCCS Directive #4943, Hand-Held Video Recording for Security Purposes, Section V(B)(4) (directing that such videos be "retained for a five-year period.").

4.  At some point a copy of the videotape was sent by DOCCS to the NY State Correction Officers Police Benevolent Association (NYSCOPBA), which represents defendants Palou, Deal, Leonardo, Landry, and Torres.  *Urbanski Affidavit*, p. 11; *Stanbro v. Westchester Cty. Health Care Corp.*, 2021 U.S. Dist. LEXIS 163849, at *38 (S.D.N.Y. Aug. 27, 2021) ("DSS Urbanski also testified that…he believed Michael Bloomingdale, who works in DOCCS's Bureau of Labor Relations, sent a copy of the Video to the New York State Correctional Officers & Police Benevolent Association….").

5.  On November 18, 2018, the New York State Attorney General instructed DOCCS to preserve all evidence relevant to the incident.  *See* Dkt. No. 68, Declaration of AAG Deanna Collins, at ¶ 3 ("On November 18, 2018, shortly following this Office's receipt of Plaintiff's Notice of Intent (Exhibit G), this Office instructed DOCCS to put a litigation hold into place.").

6.  Both DOCCS and NYSCOPBA assert that they are unable to locate either the original or any copy of the videotape.


   2)  <u>**The admissibility of testimony from the ADA investigator re statements made to him by Weber**</u>

When asked by plaintiff's counsel at trial whether he told an investigator from the District Attorney's office that plaintiff was sitting sideways and almost leaning over the chair, and not properly sitting down at the time he was being restrained by correction officers, Weber testified that he could not recall making any such statements.  Weber persisted in his purported lack of recollection even after being shown a copy of a report of an interview conducted of him by the investigator.  Plaintiff's counsel then advised the Court that he intended to elicit testimony from ADA Investigator Edward Salinas that Weber did in fact make those statements to him. The issue then arose at trial as to whether testimony by a witness that he "could not recall" making a

---

police by an anonymous caller where evidence was intended "to establish the reasons for the return of the officers to the scene, not to prove the truth of the caller's" statement): <u>United States v. Slaughter</u>, 386 F.3d 401, 403 (2d Cir. 2004) (finding no error with respect to admission of "purportedly hearsay testimony" where it "was proffered for a legitimate purpose — namely, explaining how the officer came to find the weapon").")

statement opens the door to testimony by a third party that the witness did in fact make that statement on a prior occasion.  *See* Fed. R. Evid. 613, Witness's Prior Statement.

As an initial matter, the admissibility of this prior statement by Weber, who is a party to this action, is governed primarily by Fed. R. Evid. 801(d)(2).  Indeed, FRE 613(b), which addresses "Witness's Prior Statement," concludes with the following language: "This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2)."  And Fed. R. Evid. 801(d)(2)(A) provides that a statement is not hearsay when "[t]he statement is offered against an opposing party and…was made by the party in an individual or representative capacity."

Here, since the prior statement is offered against Weber, a party, and is alleged to have been made by Weber in an individual capacity, the statement is admissible under FRE 801(d)(2)(A).  Whether Weber's prior statement also is inconsistent with his trial testimony that he could not recall making that statement therefore does not affect its admissibility under FRE 801(d)((2)(A).

But even under FRE 613, Weber's statement to the investigator still could be independently admissible as inconsistent with his trial testimony that he does not recall making any such statement.  *See, e.g*., *United States v. Tory*, 52 F.3d 207 (9th Cir. 1995), *app. after remand, remanded*, 95 F.3d 1160, 1996 U.S. App. LEXIS 38460 (9th Cir. 1996) (trial court erred in ruling that witness's pretrial statement to FBI agent that robber was wearing sweatpants at time of robbery was not inconsistent with her testimony that she did not remember describing them to agent in that particular way, since statements were inconsistent); *cf. United States v. Meza*, 701 F.3d 411, 427 (5th Cir. 2012) (noting that a witness' purported failure to remember "can present a district court with a fact-specific inquiry of whether a claim of forgetfulness about a prior statement is genuine or feigned, and therefore consistent or inconsistent,"); *but cf.  United States v. Brown*, 788 F.3d 830 (8th Cir. 2015) (trial court did not abuse its discretion in disallowing prior statements of witness where the witness testified that she did not remember making alleged statements, and trial court reasonably determined that her lack of recollection was genuine).  Here, where the jury certainly is entitled to question Weber's overall credibility based on other aspects of his testimony, the jury should also should be allowed to hear Salinas testify that Weber previously made a statement of which he claims not to have a current recollection.

Based on the foregoing, plaintiff maintains that he should be allowed to elicit testimony from ADA Investigator Edward Salinas that Weber told Salinas that plaintiff was sitting sideways and almost leaning over the chair and not properly sitting down at the time he was being restrained by correction officers.

Thank you.

Very truly yours,

*Edward Sivin*

Edward Sivin

Cc: All parties (via ECF)