UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHAD STANBRO,

                     Plaintiff,

     v.

CORRECTION OFFICER NADYA PALOU,
*et al.*,

                     Defendants.

---

CHAD STANBRO,

                     Plaintiff,

     v.

WESTCHESTER COUNTY HEALTH
CARE CORPORATION, WESTCHESTER
MEDICAL CENTER, FRANK WEBER, and
JOHN FULL,

                     Defendants.

---

Nos. 20-CV-1591 (KMK),
19-CV-10857 (KMK)

OPINION & ORDER

---

<u>Appearances</u>:

Andrew C. Weiss, Esq.
Borrelli & Associates, PLLC
Garden City, NY
*Counsel for Plaintiff*

Glenn D. Miller, Esq.
Edward Sivin, Esq.
Sivin & Miller, LLP
New York, NY
*Counsel for Plaintiff*

Mark Francis Heinze, Esq.
Ofeck & Heinze, LLP
Hackensack, NJ
*Counsel for Defendants Palou & Deal*

Bradley Steward Gross, Esq.
Law Offices of Bradley S. Gross
New York, NY
*Counsel for Defendant Deal*

Brendan Michael Horan, Esq.
Federal Bureau of Investigation
Washington, DC
*Counsel for Defendant Leonardo*

Jeb Harben, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant Leonardo*

Robert Anthony Fitch, Esq.
Iolanda Valentina D'Ambrosi-Francavilla, Esq.
Rawle & Henderson LLP
New York, NY
*Counsel for Defendant Frank Weber, DDS*

KENNETH M. KARAS, United States District Judge:

Plaintiff Chad Stanbro ("Stanbro" or "Plaintiff") brought this consolidated Action under

42 U.S.C. § 1983, against Corrections Officers Nadya Palou ("Palou"), Raymond Deal ("Deal"),

Kristofer Leonardo ("Leonardo"), Richard Landry ("Landry"); Correction Nurse Gary Pagliaro

("Pagliaro");[1] Correction Sergeant Enrique Torres ("Torres"); Westchester County Health Care

Corporation ("WCHCC"); and Frank Weber, DDS, a medical practice that includes doctors

Frank Weber ("Weber") and John Full ("Full").[2]  The case proceeded to trial where a jury found

---

[1] The Court severed claims against Defendant Pagliaro from the consolidated Action upon news of his passing.  (*See* Order (Dkt. No. 173, 20-CV-1591 Dkt.).)

[2] Plaintiff initially sued WCHCC, Weber, and Full, (*see* 19-CV-10857 Dkt.), and later initiated a separate action against the Defendant Corrections Officers, (*see* 20-CV-1591 Dkt.). Those cases were consolidated for discovery, (*see* Stipulation to Consolidate (Dkt. No. 43, 20-

Palou, Deal, and Leonardo (for these purposes, "Defendants") liable for violations of Plaintiff's constitutional rights in connection with a series of events on August 31, 2018, which left Plaintiff temporarily paralyzed.  (*See* Decl. of Robert Fitch, Ex. 6 ("Verdict Sheet") (Dkt. No. 207).)  The jury also found Weber liable for medical malpractice.  (*Id.*)  Before the Court is Plaintiff's Motion for Attorneys' Fees.  (Not. of Mot. (Dkt. No. 245).)  For the following reasons, Plaintiff's Motion is granted in part, and the Court awards him $691,200.20 in attorneys' fees and costs.

## I.  Background

### A.  Factual Background

The Court assumes the Parties' familiarity with the facts of this case as developed at trial. For the purposes of this Motion, the Court recounts background facts from the Amended Complaint to identify the fee-shifting claims at issue and discusses the jury's findings about those claims at trail.

In August 2018, Plaintiff was an inmate at the Fishkill Correctional Facility in Beacon, NY.  At the end of that month, on August 31, 2018, he was scheduled for outpatient dental surgery at Westchester Medical Center.  (Am. Compl. ¶ 32).  Four Corrections Officers— Defendants Palou, Deal, Leonardo, and Landry—accompanied him to that procedure the day of. (*Id.* ¶ 35.)

During the surgery, Plaintiff experienced an adverse reaction to anesthesia that he had received before the procedure and awoke in an agitated state.  (*Id.* ¶ 37.)  Plaintiff alleged that, in attempting to subdue him, the four officers proceeded to assault him and that one officer thrust

---

CV-1591 Dkt.)), and were tried jointly, (*see* Sched. Order (Dkt. No. 112, 20-CV-1591 Dkt.)). Unless stated otherwise, record citations from this point forward refer to the 20-CV-1591 docket.

their knee into Plaintiff's throat.  (*Id.* ¶¶ 38–39.)  As a result, Plaintiff claimed that he was unable to walk or breathe properly.  (*Id.* ¶ 42.)

Meanwhile, Plaintiff alleged that his treating physicians, Drs. Weber and Full, observed the officer's use of force, but did nothing to intervene or otherwise help him.  (Compl. ¶ 24 (Dkt. No. 1, 19-CV-10857 Dkt.).)  The doctors aborted the surgery and discharged Plaintiff notwithstanding his injuries.  Once discharged, the Defendant officers transported him back to Fishkill.  (Am. Compl. ¶ 43.)

Back at Fishkill, Plaintiff alleged that Defendant Pagliaro, a nurse at the facility, accused him of faking his injuries, attempted to cause him further pain, and otherwise tried to delay additional treatment.  (*Id.* ¶¶ 46–47).  Hours passed and Plaintiff was eventually transported to a hospital where doctors diagnosed him with various injuries including partial quadriplegia.  (*Id.* ¶ 53).

This chain of events formed the basis for several categories of claims that the jury considered at trial:

- For the use of force during Plaintiff's surgery:
    - Excessive force as to Defendants Palou, Deal, Leonardo, and Landry
    - Deliberate indifference as to the same Defendant officers
    - Failure to intervene as to Palou, Deal, and Landry
- For the Plaintiff's care at, and discharge from, the clinic:
    - Deliberate indifference as to Defendants Weber and Full
    - Medical malpractice as to the Defendant doctors
- For Plaintiff's treatment en route to Fishkill from the clinic:
    - Deliberate indifference as to Palou and Deal
- For Plaintiff's treatment upon his return to Fishkill:
    - Excessive force as to Nurse Pagliaro
    - Deliberate indifference as to Torres

(*See* Verdict Sheet.)  The jury found that Defendant Leonardo was liable for excessive force; that Defendants Palou and Deal were liable for deliberate indifference both at, and en route from, the clinic; and that Defendant Weber was liable for medical malpractice.  It awarded a total of $2 million in compensatory damages and $100,000 in punitive damages.  (*Id*. at 6–8.)

### B.  Procedural History

Plaintiff filed the instant Motion for Attorneys' Fees on March 20, 2023.  (Not. of Mot.; Decl. of Edward Sivin, Esq. in Supp. of Mot. ("Sivin Decl.") (Dkt. No. 246); Mem. of Law in Supp. of Mot. ("Pl's Mem.") (Dkt. No. 247).)  After an extension, (*see* Order (Dkt. No. 251)), Defendants filed their responses on May 22, 2023, (Mem of Law in Opp. ("Deal & Palou Mem.") (Dkt. No. 253); Mem. of Law in Opp. ("Leonardo Mem.") (Dkt. No. 255)).  And on June 2, 2023, Plaintiff filed his reply.  (Reply Mem. of Law ("Pl's Reply") (Dkt. No. 257); Aff. of Edward Sivin, Esq. in Supp. of Mot. ("Sivin Aff.") (Dkt. No. 256).)

## II.  Discussion

Under 42 U.S.C. § 1988, a district court is authorized to award the prevailing party in a civil rights lawsuit reasonable attorneys' fees and costs.  *See Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019).  Plaintiff is the prevailing party in this case because he obtained a favorable merits judgment at trial.  *See Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 137 (2d Cir. 2011) ("[P]laintiffs may be considered prevailing parties for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (first alteration in original) (citation omitted)).

"Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case— creates a presumptively reasonable fee." *Santander Consumer USA, Inc. v. City of Yonkers*, No. 20-CV-4553, 2022 WL 4134718, at *4 (S.D.N.Y. Sept. 12, 2022) (alteration in original) (quoting

*Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *accord Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  "After this calculation is performed, a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee, but only when it . . . [omits] a factor that may properly be considered in determining [such a] fee."  *Robles v. City of New York*, No. 19-CV-6581, 2021 WL 1034773, at *4 (S.D.N.Y. Feb. 26, 2021), *report and recommendation adopted*, 2021 WL 1177462 (S.D.N.Y. Mar. 29, 2021).

Plaintiff requests a total of $917,133.00 in fees and $20,549.30 in costs.[3]  For the reasons stated below, the Court makes one adjustment to Plaintiff's requested rates, decides to impose a 25% lodestar reduction, and reduces portions of claimed costs.

A.  Reasonable Rates

"The reasonable hourly rate is the rate a paying client would be willing to pay."  *Robles*, 2021 WL 1034773, at *5 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).  That rate "should be based on rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation,'" *Smith v. City of New York*, No. 19-CV-6198, 2022 WL 939711, at *3 (E.D.N.Y. Mar. 28, 2022) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)), in "the district where the district court sits," *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019).

Stanbro requests the following rates in this Action: (1) $700 for work performed by Edward Sivin and Glenn Miller, the partners and principals of Sivin & Miller LLP ("S&M"); and (2) $150 for work performed by paralegals Gabriella Birzh and Stephanie Leibowitz and legal assistants Jason Miller and Jake Ethé.  (Pl's Mem. 1, 6.)  For support, Plaintiff attaches the

---

[3] Plaintiff initially claimed $918,998.00 in fees, but Leonardo pointed out a few computational errors, (*see* Leonardo Mem. 3), which Plaintiff accepts, (Pl's Reply 3 n.1).

declarations of four attorneys who attest to Sivin and Miller's skill and experience.  (*See* Sivin

Decl. Exs. 1–4.)  Defendants believe these rates are excessive.  They propose either $450,

(Leonardo Mem. 13), or $475 (Deal & Palou Mem. 17), for Sivin and Miller, and $75 for S&M's

paralegals and legal assistants, (*see id*. at 17–18; Leonardo Mem. 13).[4]

      1.  Sivin & Miller

Past cases have recognized that "the customary rate for experienced litigators ranges from

about $400 to $600 per hour" in civil rights actions.  *Ekukpe v. Santiago*, No. 16-CV-5412, 2020

WL 1529259, at *3 (S.D.N.Y. Mar. 31, 2020) (collecting cases); *see also Cocuzza v. Rockland

County*, No. 17-CV-8217, 2019 WL 6498915, at *4 (S.D.N.Y. Nov. 7, 2019) ("Precedent in the

Southern District of New York demonstrates that a reasonable hourly rate for a civil rights

attorney can range from $250 to $650." (citation omitted)), *report and recommendation adopted*,

2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019); *Mahan v. Roc Nation, LLC*, No. 14-CV-5075, 2016

WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016) ("New York district courts have approved rates for

experienced law firm partners in the range of $500 to $800 per hour." (citation omitted)).  Fee

cases, however, are inherently backward-looking and cannot account for legal market trends or

economic conditions like inflation.  Accordingly, courts may "increase[] the rates awarded in the

same case over time" as "hourly rates continue to increase."  *Gulino v. Bd. of Educ. of City Sch.

Dist. of City of N.Y.*, No. 96-CV-8414, 2021 WL 4463116, at *5 (S.D.N.Y. Sept. 24, 2021),

*report and recommendation adopted*, 2021 WL 4443628 (S.D.N.Y. Sept. 28, 2021); *see also

Harty v. Par Builders, Inc*., No. 12-CV-2246, 2016 WL 616397, at *3 (S.D.N.Y. Feb. 16, 2016)

(adjusting rate for inflation); *Yea Kim v. 167 Nail Plaza, Inc*., No. 05-CV-8560, 2009 WL 77876,

---

[4] In contrast to the proposed rates for other paralegals and assistants, Deal and Palou propose a rate of $60 per hour for Jason Miller.  (Deal & Palou Mem. 17–18.)  They do not explain this discrepancy.  (*See generally id*.)

at *8 (S.D.N.Y. Jan. 12, 2009) (applying a "standard inflation factor" to hourly rates).  To get a sense of prevailing rates in today's dollars, adjusting *Ekukpe*'s $400-to-$600 range for inflation results in a range of $475 to $713 per hour.[5]

Sivin and Miller's requested rate sits at the high end of that range, but it is not unreasonable.  Each attorney has over 35 years of experience litigating civil rights cases, (*see* Sivin Decl. ¶¶ 5–7 & n.2), and they provided declarations from four other experienced litigators who each state that $700 is a reasonable rate in this case.  (*See* Sivin Decl. Exs. 1–4.)  This litigation also involved several moving parts.  Plaintiff tried multiple claims against multiple defendants, the case called for expert medical testimony, (*see* Dkt. Nos. 145–156), and it culminated in a roughly two-week-long trial where Sivin and Miller achieved a favorable result, (*see generally* Dkt. (noting jury selection began on June 27, 2022, and that trial concluded on July 14, 2022).)

To be sure, this is not the most complicated or exceptional civil rights case.  But the Court is persuaded by the need to avoid unfairly anchoring compensation.  As far back as 2010, if nor farther, courts have quoted $600 as the upper bound of reasonable rates for "experienced civil rights attorneys."  *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (citation omitted); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (finding $600 per hour reasonable for experienced partner in Title VII case).  Yet they have been inconsistent about revising those rates "over time," as courts consistently recognize they should.  *See Mugavero*, 2010 WL 451045, at *5 (citation omitted).  So, while $700 per hour appears high considering awards in similar cases, the Court finds that rate is fully consistent with fee-shifting caselaw in 2024.  Accordingly, the Court finds Sivin and

---

[5] *See* CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

Miller's rate of $700 per hour to be reasonable.  *See Restivo v. Nassau County*, No. 06-CV-6720, 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) (awarding $700 per hour rate to attorneys with "forty years of experience litigating civil rights [cases]").

Leonardo argues that a much lower rate is appropriate because the case was straightforward "at its core."  (Leonardo Mem. 11–13.)  The point largely relates to Plaintiff's expert:  Leonardo recognizes that expert testimony adds complexity to a case but suggests Plaintiff could have obtained a similar (and cheaper) result without it.  (Leonardo Mem. 12 ("[W]hether Plaintiff was temporarily completely paralyzed . . . or temporarily partially paralyzed . . . appears to have had little bearing on the amount of the verdict . . . .").)  Speculation aside, the Court already held that Dr. Todd's testimony would be helpful to the jury—a determination that the jury's substantial verdict in no way undermines.  (*See* Order (Dkt. No. 169) (denying motion to exclude Dr. Todd's testimony).)  *See also* Fed. R. Evid. 702 (stating an expert may testify if it is "more likely than not that" their "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").  More broadly, to the extent Plaintiff's strategic decisions resulted in an excessive amount of complexity and time spent litigating those case, the Court considers that issue with respect to the number of hours billed.

Leonardo also contends that a lower rate is appropriate because Plaintiff did not succeed on all his claims.  (Leonardo Mem. 12–13.)  But while caselaw supports reducing compensation for hours billed to unsuccessful claims, *see, e.g.*, *Raja v. Burns*, 43 F.4th 80, 87–88 (2d Cir. 2022), Leonardo does not provide authority for reducing *rates* for the same reason.  Nor does that type of reduction make sense.  Assuming hours are appropriately apportioned, the fact that an attorney did not succeed on certain claims does not cheapen the time spent on successful ones.

Defendants also cite multiple cases where courts awarded S&M lower rates, but the Court does not find them persuasive.  In *Ekupke*, Judge Torres noted S&M's "extensive experience" but set a $450 per hour rate because that case—unlike this one—involved "light discovery, no expert testimony," limited motion practice, and "five days of trial."  *See* 2020 WL 1529259, at *3.  Two other cases, cited by Deal and Palou, arose in the Northern District, where the range of reasonable rates is considerably lower than it is here.  *See Tranchina v. McGrath*, No. 17-CV-1256, 2021 WL 5139471, at *2 (N.D.N.Y. Nov. 4, 2021) ("The Northern District has upheld $350 per hour for attorneys with more than twenty years of experiences."); *Montanez v. City of Syracuse*, No. 16-CV-550, 2020 WL 5123134, at *5 (N.D.N.Y. Aug. 31, 2020) (finding per-hour fee of "$275–$350" to be reasonable "for experienced partners").[6]  And they provide no analysis comparing a third case, in New York Supreme Court, to this one.  (*See* Deal & Palou Mem. 17 (citing *Wingate v. City of New York*, 2013 N.Y. Slip Op. 33687 (N.Y. Sup. Ct. 2013).).)  Accordingly, the Court adopts Sivin and Millers proposed hourly rate of $700.[7]

### 2.  Paralegals & Legal Assistants

Plaintiff also requests a $150-per-hour rate for S&M's paralegals and legal assistants.  Although courts in this district "approve paralegal hourly rates between $150 and $200," *see, e.g.*, *1979 Fam. Tr. Licensor, LLC v. Darji*, No. 19-CV-4389, 2020 WL 9596279, at *1

---

[6] Deal and Palou also argue that Sivin and Miller's rates should be reduced for the hours they performed "administrative tasks."  (*See* Deal & Palou Mem. 16 (citing *Tatum v. City of New York*, No. 06-CV-4290, 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28, 2010) ("Courts regularly reduce the rate billed by attorneys for work done on administrative or clerical tasks.").)  The Court considers this issue, along with other arguments about excessive or duplicative time, infra § II.B.3.

[7] Plaintiff appropriately seeks fees for travel time at half the requested rate for legal work.  (*See* Sivin Decl. ¶ 39)  *See also, e.g.*, *Cabrera v. Schafer*, No. 12-CV-6323, 2017 WL 9512409, at *13 (E.D.N.Y. Feb. 17, 2017) ("[T]ravel time is appropriately reimbursed at one-half of the determined hourly rate." (citation omitted)), *report and recommendation adopted*, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017).

(S.D.N.Y. Sept. 30, 2020) (collecting cases), that range appears to be contingent on some degree of experience, *see M.H. v. N.Y.C. Dep't of Educ.*, No. 20-CV-1923, 2021 WL 4804031, at *15 (S.D.N.Y. Oct. 13, 2021) (finding "[p]aralegals with evidence of specialized qualifications typically receive" higher rates but those without formal "training, licenses, degrees or certifications" typically receive a "lower rate[s]" (citation omitted)); *see also A.B. v. N.Y.C. Dep't of Educ.*, No. 20-CV-3129, 2021 WL 951928, at *7 (S.D.N.Y. Mar. 13, 2021) (same). Paralegals with little-to-no experience, by contrast, typically receive lower rates around $100-per-hour.  *See A.B.*, 2021 WL 951928, at *7; *see also TufAmerica Inc., v. Diamond*, 12-CV-3529, 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016) ("Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour.").

Defendants suggest an even lower rate of $75 is appropriate for inexperienced paralegals, citing *Ekukpe*, which examined fees for S&M's legal assistant, Jake Ethé, shortly after he was hired.  *See* 2020 WL 1529259, at *5.  *Ekukpe*, in turn, relied on a cluster of cases from 2015–2017, stating "$75 per hour" was customary at the time.  *Id*. (citing, inter alia, *Shabazz v. City of New York*, No. 14-CV-6417, 2015 WL 7779267, at *4 (S.D.N.Y. Dec. 2, 2015)).  Adjusting that backward-looking figure for inflation results in a rate of nearly $100, which is consistent with the more recent caselaw.[8]

Plaintiff states that Ethé now has over five years of experience at S&M, has worked on dozens of similar cases, and has developed significant legal research skills.  (Sivin Decl. ¶¶ 14–15.)  Considering his experience and training, the Court finds that a rate of $150 is appropriate. The three other paralegals and assistants—Birzh, Miller, and Leibowitz—are recent college

---

[8] $75.00 in September 2015, has the same buying power as $96.78 in November 2023. *See* CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

graduates who completed law-related coursework.  (*See* Sivin Decl. ¶¶ 11–13.)  Beyond that

general information, Plaintiff does not state when they were hired and does not discuss any

special expertise.  (*See generally id.*)  Without further evidence, the Court finds that a "lower rate

of $100-per-hour" for those fee earners is appropriate.  *M.H.*, 2021 WL 4804031, at *15

(considering situation where fee applicant "failed to provide evidence showing that a paralegal

has special qualifications").

### B.  Reasonable Hours

Plaintiff seeks fees for 1,192.8 hours of time billed by his two attorneys, and 484.82

hours billed by S&M's paralegals and legal assistants.  (Pl's Mem. 8.)  Defendants object on

several grounds: (1) that S&M achieved only partial success, (Leonardo Mem. 4–10); (2) that

S&Ms timesheets are vague and contain excessive blockbilling, (Leonardo Mem. 14–15);

(3) that some entries are duplicative and inefficient, (*id.* at 15–18); (4) that counsel improperly

billed for clerical tasks, (*id.* at 18–19); and (5) that S&M spent too many hours on the instant

Motion, (*id.* at 18).[9]

"The party seeking attorney's fees also bears the burden of establishing that the number

of hours for which compensation is sought is reasonable."  *Torcivia v. Suffolk County*, 437 F.

---

[9] Deal and Palou raise many of the same objections but do so by proposing reductions for various groups of entries.  (Deal & Palou Mem. 18–27.)  For example, they mark certain entries "DISC"—for discovery—and propose a 50% hours reduction for that time because "[d]iscovery was done on a combined/consolidated basis for all claims."  (*Id.* at 21; *see also* Aff. of Mark F. Heinze in Opp. ("Heinze Aff."), Exs. B–D (marked-up timesheets) (Dkt. No. 252).)  The Court declines to adopt this methodology.  Deal and Palou claim that "it is not necessary to quarrel about one entry or another" under their approach, (Deal & Palou Mem. 20), but to verify their proposed groupings the Court would have to do just that.  The substantially more efficient course is to consider Defendants' substantive objections and factor them into an overall percentage deduction.  *See, e.g.*, *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-CV-8987, 2022 WL 413229, at *12 (S.D.N.Y. Feb. 9, 2022) (explaining courts "regularly" adopt percentage deductions for the sake of efficiency (citation omitted)).  "[T]rial courts need not . . . become green-eyeshade accountants."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Supp. 3d 239, 253 (E.D.N.Y. 2020) (citation omitted).  In evaluating reasonableness, the Court

"must examine the attorney's records that detail the time expended," *Congregation Rabbinical*

*Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) (citation

omitted), considering "its own familiarity with the case and its experience generally," *DiFilippo*

*v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).  And the Court may exclude "claimed hours that it

views as 'excessive, redundant, or otherwise unnecessary.'"  *Bliven v. Hunt*, 579 F.3d 204, 213

(2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))); *see also Raja*, 43

F.4th at 87 (same).

"The [C]ourt may also decrease the total award from the claimed amount because of

'vagueness, inconsistencies, and other deficiencies in the billing records.'"  *Raja*, 43 F.4th at 87

(quoting *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149, 173 (2d Cir. 1998)); *see also id*. (noting the

Court can reduce time "spent on clerical tasks" but that such reductions are "not required"

(quoting *Lilly*, 934 F.3d at 234)).  To make those reductions, "[a] district court is not obligated to

undertake a line-by-line review of [the prevailing party's] extensive fee application."  *Nikonov v.*

*Flirt NY, Inc*., No. 19-CV-7128, 2022 WL 1443429, at *3 (S.D.N.Y. May 6, 2022) (second

alteration in original) (quoting *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 150 (2d Cir.

2014)).  Instead, "the [C]ourt has discretion simply to deduct a reasonable percentage of the

number of hours claimed as a practical means of trimming fat . . . ."  *Raja*, 43 F.4th at 87

(citation omitted); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA*

*Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (same).

Further, a district court "may award fees under [§] 1988 even if the plaintiff is not

victorious on every claim."  *Raja*, 43 F.4th at 87.  Indeed, "where the 'plaintiff has obtained

excellent results,'" "a fully compensatory fee" is appropriate, *id.* (quoting *Hensley*, 461 U.S. at

435), because he "has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes," *id.* (quoting *Fox*, 563 U.S. at 834).  A full fee is also appropriate where the plaintiff achieved partial success, but his claims involved "a common core of facts or . . . related legal theories."  *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (citation omitted). Where, by contrast, "unsuccessful claims were based on different facts and different legal theories and thus 'bore no relation to the grant of relief,' the prevailing party generally is not entitled to compensation for work on the unsuccessful claims."  *Raja*, 43 F.4th at 88 (quoting *Fox*, 563 U.S. at 834); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the [reasonable fee] amount." (quotation marks omitted)).  Even then, "the degree of success obtained" remains the "most critical factor"—an award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Raja*, 43 F.4th at 88 (citation omitted); *accord Rosario v. City of New York*, No. 18-CV-4023, 2023 WL 2523624, at *4 (S.D.N.Y. Mar. 15, 2023).

Finally, "[t]here is no precise rule or formula for determining a proper attorney[s'] fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors."  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (quotation marks omitted).  At the end of the day, the Court's goal is "is to do rough justice, not to achieve auditing perfection."  *Fox*, 563 U.S. at 838.[10]

---

[10] Defendants Deal and Palou devote much of their Opposition to twelve factors drawn from the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), that courts routinely consider in awarding fees.  (*See* Deal & Palou Mem. 8–15.) In adopting the lodestar approach, "however, the [Supreme] Court clarified that may of the *Johnson* factors 'are subsumed within the initial calculation' of the lodestar . . . , and therefore

The Court has carefully reviewed Plaintiff's billing records in light of Defendants' objections and its own experience. Plaintiff's submissions are something of a mixed bag. A good portion of S&M's billing is adequate, but there are a few issues that warrant a fee reduction. Taking all those issues into account, the Court determines that a lodestar reduction of 25% is appropriate.

### 1. Degree of Success

The Parties agree that Plaintiff was not successful on all his claims. Plaintiff does not believe S&M's fee should be reduced at all on that basis, (*see* Pl's Reply 2), while Defendants seek a lodestar reduction of at least 35%, (*see* Leonardo Mem. 6 (requesting either 35% or 50% reduction); Deal & Palou Mem 21–22 (proposing 50-to-100% reductions for various categories of time spent on unsuccessful claims).) For two reasons, the Court agrees with Plaintiff.

First, Plaintiff's degree of success—"the most critical factor," *see Hensley*, 461 U.S. at 436—decisively favors a full award. At their core, Plaintiff's claims all sought to redress the severe injuries caused by Defendants during and after Plaintiff's August 31, 2018, surgery. (*See* Pl's Reply 1–2; Am. Compl. ¶¶ 59–70.) "Redressing that wrong at least arguably required bringing alternative legal theories against several of the [individuals] involved," *see Rosario*, 2023 WL 2523624, at *4, as the events described in the Amended Complaint implicated numerous individuals, and counsel may not have known where to place liability at the outset, (*see* Sivin Decl. ¶ 18). Although the jury did not find liability on all *theories*, its damages verdict represented substantial, if not full, compensation for the injuries alleged. In light of Plaintiff's

---

'cannot serve as independent bases for increasing or decreasing the basic fee award[.]'" *Lilly*, 934 F.3d at 229 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65 (1986)). Per that precedent, the Court adopts the lodestar as the "presumptively sufficient" fee and considers Deal and Palou's objections only to the extent they present the "rare circumstances" in which "that presumption may be overcome." *Id*. at 231 (quoting *Perdue*, 559 U.S. at 552, 553–54).

goals, that $2 million verdict finding Defendants violated his constitutional rights is nothing short of an excellent result.

That remains true despite Plaintiff's unsuccessful claims against Defendants Weber, Full, Torres, and Landry for medical indifference and failure to intervene.  (*See* Leonardo Mem. 5.)  Because Plaintiff's claims revolved around the same injuries, he would not have "been entitled to a multiple of the damages he received if he had prevailed" as to those defendants.  *See Rosario*, 2023 WL 2523624, at *4.  Indeed, the jury was instructed that "Plaintiff is entitled to recover only once for any injuries."  (Jury Charge at 32.)  While the jury may have awarded *marginally* more damages if these other Defendants were found to have caused additional harm, that circumstance does not take away from Plaintiff's otherwise strong result.  *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("[T]he degree of success achieved is not limited to inquiring whether a plaintiff prevailed on individual claims." (quotation marks omitted)).  In any event, the Court's fee award need not be proportional to Plaintiff's recovery.  *See Najera v. Kurtishi*, No. 21-CV-01309, 2024 WL 180867, at *4 (S.D.N.Y. Jan. 17, 2024) ("Courts have repeatedly rejected the notion that fee awards . . . must be proportional to the plaintiff's recovery."); *see also Millea*, 658 F.3d at 169 ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." (emphasis in original)).

Second, Plaintiff's claims all "involve[d] a common core of facts."  *See Raja*, 43 F.4th at 88 (citation omitted).  The relevant events occurred on a single day and were part of a series of incidents related to Plaintiff's dental surgery.  Defendants assert that Plaintiff's claims are "entirely separate," (*see* Leonardo Mem. 5), which is true in the limited sense that each claim relates to an individual Defendant's conduct.  But the circumstances underlying his successful

and unsuccessful excessive force and failure to intervene claims are intimately related—so much

so that many of the relevant actions by Defendants occurred at the same time in the same room.

(*See* Pl's Reply 4–5.)  Similarly, Plaintiff's claims arising out of his transfer back to Fishkill and

delayed return to the hospital, (*see* Deal & Palou Mem. 14 (referencing "events separate from the

'en route' and 'in the dental clinic' events")), were set in motion by the doctors' decision to

discharge Plaintiff after his surgery, (*see* Pl's Reply 4–5).  When the underlying facts are so

closely tied, much of counsel's time "will be devoted generally to the litigation as a whole,

making it difficult to divide the hours expended on a claim-by-claim basis."  *Holick v. Cellular

Sales of N.Y., LLC*, 48 F.4th 101, 106 (2d Cir. 2022) (citation omitted).

Defendants' attempt to separate claims against Weber and Full, (*see* Deal & Palou Mem.

6, 11, 13; Leonardo Mem. 8–9), are unpersuasive for similar reasons.  Although those claims

were raised in a separate lawsuit, they arise out of the same events as all the other claims—which

explains why the Parties jointly agreed to consolidate the cases for discovery.  (*See* Joint Stip.

(Dkt. No. 38).)  To the extent Defendants believe these claims are separable because they are

based on different legal theories, that view is incorrect.  The Second Circuit and Supreme Court

have emphasized that claims "can be intertwined based on common facts" even if each theory

requires "different legal elements."  *Green*, 361 F.3d at 98 n.2 (citing *Hensley*, 461 U.S. at 435

("Litigants . . . may raise alternative legal grounds for a desired outcome, and the court's

rejection of . . . [those] grounds is not a sufficient reason for reducing a fee.")).

Given those two factors, Defendants' (extensive) remaining objections about the "amount

of time" spent pursuing unsuccessful claims do not move the needle.  (*See* Leonardo Mem. 6–10;

Deal & Palou Mem. 19–24.)  Indeed, once the Court has accounted for "the significance of the

overall relief obtained," it need not "determine how much time counsel devoted to each []

overlapping claim." *Raja*, 43 F.4th at 88 (citation omitted); *see also Rosario*, 2023 WL 2523624, at *4 (same).  Plaintiff's favorable result entitles him to a fee for litigating those intimately related claims, too.  *Hensley*, 461 U.S. at 435 ("[T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."); *see also Fox*, 563 U.S. at 834 (same); *Green*, 361 F.3d at 99 ("[F]ull fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined[.]"); *Lunday*, 42 F.3d at 134 (stating "hours spent on the unsuccessful claims need not be excluded from the [reasonable fee] amount" if those claims are not "wholly unrelated" (quotation marks omitted)).

The Court also cleans up one additional objection.  Defendants note that Plaintiff's request covers work for both fee- and non-fee-shifting claims.  (Leonardo Mem. 4–5; Deal & Palou Mem. 9, 11.)  Specifically, while § 1988 entitles Plaintiff to fees for his § 1983 claims, that provision does not apply to his state medical malpractice claim.  *See Anderson v. County of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *8 n.7 (E.D.N.Y. Apr. 11, 2016) (noting state-law claims "are not eligible for [§ 1988] fee-shifting").  However, "[h]ours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the lodestar calculation," if "they would have been expended" had plaintiff "not included [the] non-fee-shifting claims in his complaint."  *Millea*, 658 F.3d at 168 n.4.  As stated above, the malpractice claim is factually intertwined with claims subject to fee shifting.  And Plaintiff correctly points out that he would have had to depose Weber and Full due to their respective roles even if they did not appear in the Complaint.  (Pl's Reply 5.)[11]  Further, a close review of S&M's timesheets

---

[11] Defendants argue that S&M is engaging in "double-dipping" by claiming fees for hours spent on the malpractice claim when it may also recover a contingency fee for success on that same claim.  (*See* Deal & Palou Mem. 6–7; Leonardo Mem. 9.)  Sivin in reply affirms that S&M's retainer agreement with Plaintiff "does not permit S&M to recover attorney[s'] fees awarded by the Court in addition to a contingency fee on the amount of the underlying

does not reveal significant time allocated to the malpractice claim alone.  The Court therefore does not exclude any hours on this basis.  *See Anderson*, 2016 WL 1444594, at *8 n.7 (finding a plaintiff eligible to recover fees for "inextricably intertwined" state-law claim in § 1983 action).

### 2.  Vagueness & Block Billing

Defendants also object to entries that they believe are vague or inappropriately block-billed.  In general, an attorney is not required to "record in great detail how each minute of his time was expended."  *Cocuzza*, 2019 WL 6498915, at *8 (citation omitted).  Vagueness becomes a problem—and a basis for reduced fees—when entries "cannot be said to document the hours claimed" or identify "the general subject matter" of the attorney's work.  *Id*. (citations omitted); *see also Peerless Network, Inc. v. AT&T Corp.*, No. 15-CV-00870, 2024 WL 20840, at *4 (S.D.N.Y. Jan. 2, 2024) (same).  Similarly, block billing is disfavored to the extent it "impedes the client's ability to understand the precise time allocable to the tasks for which it is being billed."  *Beastie Boys*, 112 F. Supp. 3d at 53 (collecting cases).  It is thus "most problematic where large amounts of time (e.g., five hours or more) are block billed[.]"  *Id*. (citing *Abdell v. City of New York*, No. 05-CV-8453, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing unproblematic where it was "for temporally short entries combining related tasks")).

Viewed against those standards, a majority of S&M's entries are adequate.  Most entries clearly define the billed task, even if some of those entries are duplicative, *see infra* § II.B.3.  Leonardo objects by quoting snippets of sentences that sound vague in isolation such as "organizing," "trial prep," and "records review," but most of those outtakes lack context.  (*See*

---

judgment."  (Sivin Aff. ¶ 23.)  The Court "has no reason to doubt the veracity" of that affirmation, and it "accepts Counsel's representations as an officer of the Court over [Defendants'] bald assertion."  *See Paghense v. United States*, No. 08-CV-10848, 2011 WL 2893616, at *3 n.4 (S.D.N.Y. July 12, 2011).

Leonardo Mem. 14.)  For example, Miller billed for "[g]eneral trial prep" on June 24, 2020, but below that listed several subtasks including reviewing "correspondence with counsel," reviewing proposed exhibits, and reviewing the Court's decisions and orders.  (*See* Sivin Decl. Ex. 6 ("Miller Timesheet") at 8.)  The same is true with respect to entries that reference "indexing." While that phrase is vague on its own, Plaintiff explains that this refers to a process where S&M paralegals cross-reference records in the case to create a master index of all testimony and evidence at trial.  (Sivin Decl. ¶ 38.)  Defendants do not dispute that assertion, and the Court finds that it provides an adequate explanation for these entries.

That said, Defendants raise legitimate concerns about a subset of S&M's entries.  They note several instances where Sivin billed for "more work" on certain papers without explaining what he was doing.  (Leonardo Mem. 18; Sivin Decl. Ex. 5 ("Sivin Timesheet"), at 5 (billing total of 6 hours for "[m]ore work on responding to rogs and document requests"); *id*. at 17 (several entries for "[m]ore work on proposed jury instructions"); *see also* Miller Timesheet at 6 ("Continued work on Deal cross").)  They also point to a number of instances where Miller billed for "review" of various papers without additional elaboration.  (*See, e.g*., Miller Timesheet at 6.)  Some of those entries make sense in context, like reviewing treatment records while preparing for cross examination of someone present for Plaintiff's treatment.  (*See id*. (entries for "Deal cross").)  But others are freestanding and lack sufficient clarity.

Additionally, while S&M's timesheets generally contain discrete time entries, the Court has some block billing concerns.  (*See generally* Sivin Decl. Exs. 5–10 (attorney and paralegal time records).)  To be sure, some block billed entries note the amount of time spent on each task. (*See, e.g*., Sivin Timesheet at 6 ("Prep Stanbro in jail (1.2); Review discovery responses just sent to me via email by Weber (.4); Legal research on discoverability of cash advances to client by

funding company (.8)").)  Several of Miller's time entries, however, block bill for long periods

of time with no subdivisions.  (*See, e.g.*, Miller Timesheet at 4 (billing 6 hours for "[c]ontinued

work on Stanbro direct," "[c]ontinued reading of three volume deposition"); *id*. at 5 (billing 6.5

hours for "[s]tart work on Leonardo cross" without noting time for each task); *id*. at 9 (billing

12.5 hours for "[r]eview of exhibits with and without opposing counsel" and several subtasks).)

And some of Sivin's entries, particularly those related to the spoilation motion and this fee

application, do the same.  (*See, e.g.*, Sivin Timesheet at 11 (billing 8.5 hours for "[i]ndex

remaining EBT transcripts, brainstorm with JE re motion, and begin drafting motion papers").)

Those large chunks of time "meaningfully cloud[]" the Court's ability to determine "the projects

on which significant legal hours were spent."  *Cruz v. Space NY 50th St LLC*, No. 17-CV-4936,

2019 WL 4061492, at *5 n.11 (S.D.N.Y. Aug. 28, 2019) (citation omitted).  Although the

obstruction is not severe, it does merit a fee adjustment.

### 3.  Repetitive Entries

As to the third objection, the Court has concerns about duplicative and inefficient billing.

This category of problem encompasses "hours billed [that] are disproportionate to the quantity or

quality of the attorneys' work."  *Inga v. Nesama Food Corp.*, No. 20-CV-909, 2021 WL

3624666, at *15 (S.D.N.Y. July 30, 2021) (quoting *Changxing Li v. Kai Xiang Dong*, No. 15-

CV-7554, 2017 WL 892611, at *21 (S.D.N.Y. Mar. 7, 2017)).  It also incorporates concerns

about "the extent of staffing that is appropriate for a given case."  *Nikonov*, 2022 WL 1443429,

at *2 (quotation marks omitted).

S&M's timesheets contain several examples of repetitive entries.  To inventory a few:

Sivin billed 3.5 and 5.3 hours on successive days for "[m]ore work on pre-motion letter

response," (Sivin Timesheet at 14); 15.7 hours across three entries for "[m]ore work on opposing

motions in limine," (*id*. at 18); 19.5 hours across three identical entries for work on Plaintiff's

spoliation motion, (*id*. at 11); and, ironically, seven identical entries for work on the instant fee

application, (*see id*. at 26).  Additionally, nearly all of Birzh's 146 hours reflect repetitive entries

for "Weber Indexing" or "Full Indexing" without any additional differentiation.  (*See generally*

Sivin Decl. Ex. 7.)  While the Court reasonably understands what that phrase means, it is not

appropriate to bill for the same task again and again without more detail.  Here, too, the Court's

concern is not pervasive, but it does factor into the reduction discussed below.  *See Sai Qin Chen*

*v. E. Mkt. Rest., Inc*., No. 13-CV-3902, 2018 WL 3970894, at *4 (S.D.N.Y. Aug. 20, 2018)

(noting it is appropriate to reduce fees for redundant entries).

Leonardo also points out that S&M billed approximately 20 hours in preparation for

Defendants' proposed summary judgment motion, which was never filed.  (Leonardo Mem. 17;

Sivin Decl. ¶ 27 n.8.)  And he is correct that a court "may disallow billing for hours spent

working on submissions that were never filed."  *Indep. Project, Inc. v. Ventresca Bros. Constr.*

*Co*., 397 F. Supp. 3d 482, 497 (S.D.N.Y. 2019) (citing *Gierlinger*, 160 F.3d at 880 (affirming

district court's refusal to award attorneys' fees "for some 35 hours spent preparing for motions

that were never filed")); *Mondragon v. Keff*, No. 15-CV-2529, 2019 WL 2551536, at *13

(S.D.N.Y. May 31, 2019) (same), *report and recommendation adopted*, 2019 WL 2544666

(S.D.N.Y. June 20, 2019); *Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586, 2017 WL

1215004, at *13 (S.D.N.Y. Mar. 31, 2017) (same).  Plaintiff claims that these hours were

justified because it was Defense counsel, not S&M, that ultimately chose not to proceed with a

summary judgment motion.  But regardless of why the motion was not filed, a client only

expects to pay for time "necessary to the litigation."  *Rai*, 2017 WL 1215004, at *13 (quoting

*Sullivan v. Syracuse Hous. Auth*., No. 89-CV-1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3,

1993)) (deducting hours "billed in anticipation of a motion that was never filed" by opposing

counsel).  S&M never had to file an opposition, so its preparation did not factor into Plaintiff's

case.  The Court therefore works these hours into the reduction discussed below.

### 4.  Clerical Tasks

There is nothing wrong with lawyers performing administrative tasks, especially at

smaller firms.  But a client may not expect to pay for that time at the rate charged for legal work.

Courts thus have "the legal authority and discretion" to "apply an across-the-board reduction to

the hours billed . . . for time spent on clerical tasks."  *Lilly*, 934 F.3d at 234; *Belgrove v. Bronner*,

No. 21-CV-9545, 2022 WL 17352488, at *3 (S.D.N.Y. Dec. 1, 2022) (same); *see also Gym Door*

*Repairs, Inc. v. Total Gym Repairs*, No. 15-CV-4244, 2023 WL 6519626, at *16 (S.D.N.Y. Mar.

31, 2023) (indicating reduction appropriate for a mix of clerical and legal work), *report and*

*recommendation adopted*, 2023 WL 6390156 (S.D.N.Y. Sept. 29, 2023).  Relatedly, a court may

reduce time that it finds is over-allocated towards higher-fee partners.  *See Okla. Firefighters*

*Pension & Ret. Sys. v. Lexmark Int'l, Inc*., No. 17-CV-5543, 2021 WL 76328, at *5 (S.D.N.Y.

Jan. 7, 2021); *see also In re Platinum & Palladium Commodities Litig*., No. 10-CV-3617, 2015

WL 4560206, at *4 (S.D.N.Y. July 7, 2015) ("Courts have reduced the fee percentage requested

where, as here, the lodestar value reflects an over-allocation of work to more expensive

partners.").

Here, too, S&M's hours are by and large reasonable excepting a few inefficiencies.

Sivin, for instance, spent time on "indexing" and scheduling.  (*See* Leonardo Mem. 18–19; *see*

*also, e.g.*, Sivin Timesheet at 25 (entries for "indexing" trial transcript).)  And some of his entries

reflect a mix of legal and administrative tasks.  (*Id*. at 7 (billing for drafting subpoena and

forwarding subpoena "to process server").)  Miller's entries lack explicit clerical references, but

a client may wonder whether his time spent "reviewing" files and records could not have been

reduced or performed by a lower fee-earner.  (*See generally* Miller Timesheet.)  In the grand

scheme of things, these entries make up a small portion of S&M's request, and the Court does

not find a systematic over-allocation of time to high fee earners.  *See Okla. Firefighters*, 2021

WL 76328, at *5.  Nevertheless, the Court notes Defendant's objection and factors it into the

lodestar reduction discussed below.

### 5.  Fees on Fees

Finally, Defendants contend that S&M spent excessive time on the instant fee

application.  In awarding for so-called "fees on fees," "[c]ourts have held that up to thirty hours

[may] be reasonably spent in preparing and defending [a] fee application."  *Torcivia*, 437 F.

Supp. 3d at 257 (citing *Johnson v. City of New York*, No. 11-CV-6176, 2016 WL 590457, at *7

(E.D.N.Y. Feb. 11, 2016)); *see also Anderson*, 2016 WL 1444594, at *9 (holding 21.26 hours

reasonable for work on fee motion); *cf. Lilly*, 934 F.3d at 235 ("Ordinarily, a district court has

authority and discretion to award attorney's fees for hours expended on a fee application . . . .").

Sivin states that he spent a total of 56.2 hours on the instant Motion.  (*See* Sivin Decl.

¶ 37 (41.5 hours on initial brief and declaration), Sivin Aff. ¶ 24 (14.7 hours on reply).)[12]  These

hours are well beyond what courts normally compensate, and Plaintiff does not point to any

special circumstances to justify additional time in this case.  (*See generally* Pl's Reply.)  *See also*

*N.Y. Times Co. v. Cent. Intel. Agency*, 251 F. Supp. 3d 710, 715 (S.D.N.Y. 2017) (noting

"applications for fees on fees must be carefully scrutinized" and finding 17 hours of time

excessive in context).  Accordingly, the Court finds this time is another factor that supports a

lodestar reduction.

---

[12] Legal assistant Jake Ethé also spent at least 13.7 hours on this Motion.  (Sivin Aff.
¶ 24.)

\*      \*      \*

The Court has carefully reviewed Plaintiff's counsel's time entries and, considering all the factors discussed above, makes an across-the-board reduction of 25% in the hours recorded by Sivin and Miller, resulting in a fee award of $673,143.75.  "In the Court's view, th[is] reduction[] accomplish[es] 'rough justice.'"  *Nikonov*, 2022 WL 1443429, at \*5 (quoting *Fox*, 563 U.S at 838).

C.  Costs

Plaintiff also seeks $20,549.30 in litigation expenses.  That figure includes $8,771.41 in hotel and travel charges for Plaintiff, Plaintiff's parents, Dr. Todd, and S&M paralegal Gabriella Birzh.  (*See* Sivin Decl. Ex. 11, at 2.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Fisher v. SD Prot. Inc*., 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  Specifically, "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."  *Torcivia*, 437 F. Supp. 3d at 257 (citation omitted); *see also Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933–34 (2d Cir. 1987) (same).  As with fee applications generally, applications for costs must be supported by "adequate documentation."  *Fisher*, 948 F.3d at 600 (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Leonardo argues that Plaintiff's requested travel costs fall outside the scope of Local Rule 54.1(c)(3), and by extension 28 U.S.C. § 1821 and § 1920.  (Leonardo Mem. 19–20.)[13]  For context, those provisions are default rules that impose various limits on taxable costs "absent explicit statutory [fee-shifting] authorization."  *Gortat v. Capala Bros.*, 795 F.3d 292, 296 (2d Cir. 2015) (citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006)). The particulars are not relevant here, however, as "it is well-established that the expenses recoverable under fee-shifting statutes such as 42 U.S.C. § 1988 are not limited to the costs taxable under 28 U.S.C. § 1920 and Local Civil Rule 54.1."  *Torcivia*, 437 F. Supp. 3d at 258 (quoting *Garcia v. City of New York*, No. CV 11-2284, 2013 WL 5574507, at *9 (E.D.N.Y. Oct. 9, 2013)); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield*, No. 09-CV-1419, 2018 WL 2332075, at *12 (D. Conn. May 23, 2018) ("Courts routinely award costs in excess to those enumerated in section 1920, pursuant to section 1988."); *see also Reiter v. Metro. Transp. Auth. of State of N.Y.*, No. 01-CV-2762, 2007 WL 2775144, at *21 (S.D.N.Y. Sept. 25, 2007) ("Case law reflects that the expenses recoverable under Title VII and other fee-shifting statutes are not limited to the costs taxable by statute and rule such as 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); and Local Civil Rule 54.1."); *cf. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.").

---

[13] Local Rule 54.1(c)(3) contains multiple restrictions including that "[n]o party to the action may receive witness fees, travel expenses, or subsistence" and that "[f]ees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained."

Further, Leonardo contends that these travel costs were excessive because the relevant individuals travelled from Staten Island, Brooklyn, and New Jersey.  (Leonardo Mem. 19.)  Plaintiff neglected to respond to this argument.  (*See generally* Pl's Reply.)  And without more, it is difficult to judge the reasonableness of these charges.  The Court, drawing on its experience, recognizes that it may be difficult to commute to White Plains daily from central Brooklyn, not to mention Staten Island.  *Cf. Savoy of Newburgh, Inc. v. City of Newburgh*, No. 04-CV-1405, 2009 WL 2448591, at *1 (S.D.N.Y. Aug. 11, 2009) (taking judicial notice of the distance between White Plains and lower Manhattan).  That said, the inclusion of $2,421.43 for a paralegal's travel expenses, and expenses for Plaintiff's parents, who are not parties and did not testify, strikes the Court as unreasonable.  It therefore exercises its discretion to reduce these costs by 25% to a new total of $6,578.56.  *See Marky's Martial Arts, Inc. v. FC Online Mktg., Inc.*, No. 19-CV-3363, 2022 WL 18276016, at *17 (S.D.N.Y. Sept. 16, 2022) (recommending similar reduction for excessive travel costs), *report and recommendation adopted*, 2023 WL 171401 (S.D.N.Y. Jan. 12, 2023).[14]

Finally, Leonardo objects to the $300 cost of serving Defendants Full, Landry, and Torres.  (Leonardo Mem. 20.)  The Court agrees.  The jury determined those parties were not liable for Plaintiff's injuries, and because there has been no other "judicially sanctioned change" in their legal relationship with Plaintiff, Plaintiff is not a "prevailing party" as to those

---

[14] The Court is unpersuaded by Leonardo's objection to Dr. Todd's $707.00 in travel costs.  (*See* Leonardo Mem 20.)  It is always possible to assert, as Leonardo does, that there are "many experts [in this District] within an easy commute" who "could have been retained to testify," (*see id.*), yet courts routinely compensate expert travel fees anyway.  *See, e.g.*, *Fed. Ins. Co. v. Mertz*, No. 12-CV-1597, 2017 WL 3206597, at *5 (S.D.N.Y. Apr. 14, 2017) (approving $7,898.22 to cover witness travel expenses), *report and recommendation adopted*, 2017 WL 3206336 (S.D.N.Y. July 26, 2017); *Reit v. Post Props., Inc.*, No. 09-CV-5455, 2010 WL 4537044, at *6 (S.D.N.Y. Nov. 4, 2010) (reimbursing expert travel expenses).

Defendants.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res*., 532 U.S. 598, 605 (2001) (defining "prevailing party").  In similar situations, courts decline to award costs attributable to parties against which the fee applicant did not prevail.  *See Paulo v. Agence France Presse*, No. 21-CV-11209, 2023 WL 7691694, at *4–6 (S.D.N.Y. Oct. 17, 2023) (declining to award costs under one of multiple fee-shifting provisions because defendants were not prevailing parties), *report and recommendation adopted*, 2024 WL 35973 (S.D.N.Y. Jan. 3, 2024); *see also Mawere v. Citco Fund Servs., (USA) Inc.*, No. 09-CV-1342, 2011 WL 6779319, at *10 (S.D.N.Y. Sept. 16, 2011) (denying award of costs as to claims with respect to which defendants were not prevailing parties), *report and recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011).  Accordingly, the Court will deduct those costs here, too.

Apart from the two adjustments above, the Court finds the rest of Plaintiff's enumerated costs to be reasonable.  It therefore awards costs of $18,056.45.

D.  Summary

Plaintiff's request, and the Court's determinations can be summarized in the following two tables.  As to the lodestar calculation:

| Fee Earner | Rate | Hours | Lodestar |
|---|---|---|---|
| Edward Sivin | $700<br>$350 (travel) | 680.4<br>19.7 (travel) | $476,280<br>$6,895 |
| Glenn Miller | $700<br>$350 (travel) | 512.6<br>10.5 (travel) | $358,820<br>$3,675 |
| Jake Ethé | $150 | 84.3 | $12,645 |
| Gabriella Birzh | $100<br>$50 (travel) | 138<br>9 (travel) | $13,800<br>$450 |
| Jason Miller | $100 | 236 | $23,600 |
| Stephanie Leibowitz | $100 | 13.6 | $1,360 |
| **Lodestar Calculation** | | | **$897,525** |

28

And as to the Court's award:

| Lodestar with 25% reduction | $673,143.75 |
|---|---|
| Costs | $18,056.45 |
| **Total** | **$691,200.20** |

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion is granted in part, and the Court awards

$690,200.20 in attorneys' fees and costs.  The Clerk of the Court is directed to enter judgment

and close the case.

SO ORDERED.

Dated:    March 21, 2024
          White Plains, New York

_____
        KENNETH M. KARAS
     United States District Judge